IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF SOUTH CAROLINA
*Pro Se* [Non-Prisoner] Complaint Form

RECEIVED
USDC CLERK, COLUMBIA, SC
2014 SEP 30 AM 9: 10

|  |  |
|---|---|
| *Enter the full name of the plaintiff in this action* | ) |
| | ) |
| Vanessa D. Bartley | ) |
| | ) |
| v. | ) |
| | ) |
| *Enter below the full name of defendant(s) in this action. If possible, please list only one defendant per line.* | ) |
| | ) |
| Wells Fargo Bank, NA | ) |
| | ) |
| Deutsche Bank Trust Company | ) |
| | ) |
| Roger Townsend + Thomas, PC | ) |
| | ) |

Civil Action No. _____
*(to be assigned by Clerk)*

**If allowed by statute, do you wish to have a trial by jury?**   Yes ☐     No ☐

## I.   PREVIOUS LAWSUITS

A.   *Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?*

Yes ☐     No ☒

1

B.  *If you answer to A is Yes, describe the lawsuit in the space below.  If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.*

1.  *Parties to this previous lawsuit:*

*Plaintiff:* _____

*Defendant(s):* _____

2.  *Court:* _____
    *(If federal court, name the district; if state court, name the county)*

3.  *Docket Number:* _____

4.  *Name(s) of Judge(s) to whom case was assigned:* _____

5.  *Status of Case:* _____
    *(For example, was the case dismissed? Settled? Appealed? Still Pending?)*

6.  *Date lawsuit was filed:* _____

7.  *Date of disposition (if concluded):* _____

C.  *Do you have any other lawsuits pending in the federal court in South Carolina?*

Yes ☐     No ☐

## II.   PARTIES

*In Item A below, place your name and address in the space provided.  Do the same for additional plaintiffs, if any.*

A.  Name of Plaintiff: Vanessa D. Bartley

Address: 68 Lilliefield DR   Elgin, SC 29045

*In Item B below, place the full name of the defendant; and his, her, or its address, in the space provided. Use Item C for additional defendants, if any.*

B.  Name of Defendant: Deutsche Bank National Trust Company
as Trust for HSI Assets Loan Obligation Trust
Address: 2007-WFI Mortgage Pass Trough Series 2007-WFI

1761 E. St. Andrews Place
Santa Ana CA 92705

2

C.  *Additional Defendants (provide the same information for each defendant as listed in Item B above):*

Rogers Townsend & Thomas PC
P.O. Box 100 200
Columbia, SC 29202

III.  STATEMENT OF CLAIM

*State here, as briefly as possible, the facts of your case. Describe how each defendant is involved. Include also the name(s) of other persons involved, dates, and places.* ***Do not give any legal arguments or cite any cases or statutes.*** *If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.*

## IV.    RELIEF.

*State briefly and exactly what you want this court to do for you.*

*I declare under penalty of perjury that the foregoing is true and correct.*

Signed this ____30____ day of _____Oct_____, 2014

_____
Signature of Plaintiff

RECEIVED
USDC CLERK, COLUMBIA, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

2014 SEP 30  AM 9: 10

Vanessa D. Bartley (Pro Se)                    Civil Action No._____

                                   Plaintiff,

v.

WELLS FARGO BANK, NA
420 Montgomery Street
San Francisco, CA 94104

Deutsche Bank National Trust Company as Trust for
HSI Assets Loan Obligation Trust 2007-WF1,
Mortgage Pass Through Series 2007 WFI
1761 E St. Andrews Place
Santa Ana, CA 92705

Roger Townsend & Thomas PC
PO Box 100200
Columbia, SC 29202                    Defendants

## COMPLAINT

## SUMMARY OF CASE

1.    On or about September 11, 2006, I presented myself as a US Army Disabled American Veteran,

      Female, African- American and applied for a mortgage through Mortgage Works/Loan Broker.

      Plaintiff begin the mortgage application process for an alleged loan to purchase property.

      Starting from the origination of the alleged loan, Defendant(s) put in place a deceptive course

      of events  which led to Violations to include Breach of Fiduciary Duty, Underwriting Predatory

      Lending , Predatory Mortgage Servicing, Real Estate Settlement Procedures Act  (RESPA), Truth

      in Lending, Consumer Protection, and  Unlawful Foreclosure filings  by the Defendant(s) among

      others. Plaintiff will show evidence from Defendant (s) own hand injury to Plaintiff in the

      origination of  alleged loan, and also show the Note / Mortgage or were invalid empty pieces of

      paper referring to a non-existent transactions whose lender has never been identified. The right to

      enforce is based on true identity of the creditor whether on the Mortgage /Note at signing or in

any foreclosure proceedings. Defendant(s) lacked standing to file foreclosures twice (2 times). Plaintiff contend During the origination of the alleged loan The Plaintiff was injured by being made subject to a form of involuntary indebtedness by deception through nondisclosure. In light of all of the foregoing facts, and on the face of the purported alleged loan documents, the terms and circumstances of the Note and Mortgage were unconscionable when made and were unconscionably exercised, and it was unconscionable enforced by a wrongful alleged loan origination followed by two (2) by unlawful foreclosures filing. Defendant(s) have had over 500 days to settle this matter with Plaintiff. (First QWR sent February 2013) Instead Defendants prevaricated and filed foreclosure and intensified debt by three (3) loan amendments (modifications). Plaintiff has tried to view and verify documents, however verification was denied when Defendant(s) kept making false assertion of fact and not disclosing fact, therefore increasing Plaintiff's debt and inducing more injury

## COMPLAINT

### CLAIM 1.      Breach of Fiduciary Duty

2.  On or about September 11, 2006, Plaintiff presented as a US Army Disabled American Veteran, Female, and African American and applied for a mortgage through Mortgage Works/Loan Broker. Plaintiff started the mortgage application process for an alleged loan from Defendant(s) to purchase property. **(Exhibit A pages 1-4)**

3   Defendant(s) set out to offer a product that lacked due diligence, good faith, was unconscionable and was not in Plaintiff's best interest as a consumer. **(Exhibit B pages 3-33)**

4   The subsequent three (3) loan agreements of the original (loan modifications) which took place in **2008** , **2010** & **2011** further added in creating a slippery slop of deceptive events.. (**Exhibit C,D,E)- (**The executed 2010 & 2012 amended Loan Agreement to the original loan was never filed by Defendant(s) with the County Register of Deeds.

**5**  Defendant(s) committed tortious conduct legal errors and setoffs. When Plaintiff  made the initial application (September 11, 2006) and than sat down at the closing table(s), on (September 29, **2006)** Plaintiff was being set up by Defendant(s) to fail with mortgages that were not in Plaintiff's best interest. **(Exhibit B page 5 Audit Summary)**

6   Plaintiff was first injured by Defendant(s) at the time the alleged Loan Application was made (September 11, 2006) Plaintiff received defective instruments in good faith, without knowledge of defects in the instrument, and paid fair value for it.

http://nationalparalegal.edu/public_documents/courseware_asp_files/realProperty/Record ingSystem/MortgagesandForeclosure.asp  **(Exhibits A, F)**

7.   Plaintiff placed self in a position of vulnerability by vesting confidence in Defendant (s)  and   its Agents who Plaintiff thought would aid, advise, or protect Plaintiff interest in this financial transaction. When this trust was violated, a breach of fiduciary duty resulted.

8.    The Defendant (s) Breached of Duty caused Plaintiff injured by  creating a snowball effect of mortgage fraud schemes, underwriting violations, involvement of Mortgage Broker and Originator, discrimination, excessive closing cost, undisclosed Balloon payment, targeting, negative amortization, excessive fees and rates, high debt ratios, fraudulently caused to execute alleged loan documents, lack of due diligence in underwriting, inappropriate loan programs  and other unfair, deceptive or fraudulent practices in transactions.  All which led to defaults and two (2) unlawful foreclosures filing.  **(Exhibits A, B, C,D,E,F,G,H,Q)**

## CLAIM 2.    UNDERWRITING VIOLATIONS

9.   "A mortgage underwriter is a mortgage professional whose job is to determine the level of risk that a borrower might default on a mortgage loan. This is a person who is specifically dedicated to this task; they often never really interact with the borrower in  person. Instead, they review various factors that will lead to approval/disapproval of the loan, such as the borrower's:"

There is a Duty of Care and a Duty of Loyalty for Underwriters   which are the cornerstone of  being a Municipal Advisor- and there exist a fiduciary duty rule for

3

municipal advisors,

http://www.aba.com/Tools/Function/Trust/Documents/WhatDoesItMeantobeaMunicipalAdvisor.pdf

10.     Mortgage underwriter liability refers to the issue of underwriting being responsible for losses caused to a borrower. This can often involve issues like fraud, misrepresentation, unfair business practices, false advertising, and other related claims. Liability can lie with the individual professional, or with their whole company, depending on who authorized a certain action.http://www.legalmatch.com/law-library/article/mortgage-underwriter-liability.html **(Exhibit A, B)**

11.     Defendant (s) certified the Plaintiff's alleged loan knowing full well that the loan(s) did not meet the basic underwriting requirements. Defendant(s) (s) failed to perform basic due diligence, failed to verify information in the loan file that bore directly on ability to make payments on the mortgage, certified the mortgage loan that contained serious defects and departures from  HUD's underwriting standards.

12.     Defendant(s)  underwriting for this loan exceeded the normal underwriting   practices for  normal and subprime loans.

13.     The debts to ratio income for this loan is **83%**

**<u>RISK FACTORS IN ALLEDGED CAUSING INJURY TP PLAINTIFF</u>**

- **Lack of due diligence in underwriting**

- **High Debt to Income Ratios**

- **High Loan to Value**

- **Balloon Payment**

- **Excessive Fees**

- **Yield Spread Premium (YSP)**

**EXHIBTS** **A.** Uniform Residential Loan Application --page 2 –**Exhibit B.** Forensic Affidavit Audit -- Page 8

## CLAIM 3   Predatory Lending Violations

14. 'Predatory Lending' is Unscrupulous actions carried out by a lender to entice, induce and/or assist a borrower in taking a mortgage that carries high fees, a high interest rate, strips the borrower of equity, or places the borrower in a lower credit rated loan to the benefit of the lender. http://www.investopedia.com/terms/p/predatory_lending.asp

15. Defendant (s) and its Underwriter (s) knew that Plaintiff was a member of a protected class when Plaintiff applied for this alleged loan.   Predatory lending involves who will benefit from a loan.  In this case the Dependents (s) each and every one of them.

   Predatory violations injury to Plaintiff found in alleged loan

   o   Loan to value ratio above 80%

   o   Debts to income ratio above 28/36%

   o   Interest rate on 1st was more that 2 points above: 6.08% (2.77 margin)[average US 5/1 ARM rate] or 6.4% [average 30-year fixed] (source Freddie Mac 1/2003- 12/2006)

   o   Excessive Closing Cost/Fee

   o   Broker Compensation >2% (including yield spread premium)

   o   Balloon Payments

   o   Bait & Switch (I was offered initially lower rate than final NOTE (RATE)

   o   Plaintiff was made to enter into modifications a number of times further  reducing equity

   o   Plaintiff payments were higher than what Plaintiff agreed to pay prior to  closing

   o   Loan amount higher than value of house

      **(EXHIBTs B** Forensic Affidavit Audit  (pages 14 -18) **Exhibit F** Mortgage

CLAIM 4  **PREDATORY MORTGAGE LENDING**

16.    Mortgage fraud is not to be confused with predatory mortgage lending, which occurs when a consumer is misled or deceived by agents of the lender. However, predatory <u>lending practices often co-exist with mortgage fraud</u>. **Predatory lending** is the unfair, deceptive, or fraudulent practices of some lenders during the loan origination process. L**oan origination** is the process by which a borrower applies for a new loan, and a lender processes that application. (http://en.wikipedia.org/wiki/Mortgage_fraud)

17.    One of the most common predatory practices is placing borrowers into higher interest rate loans than their credit risk would call for.  **(EXHIBT A, B,F)**

18.    Systematic discrimination that creates a separate and unequal credit system trapped Plaintiff in higher cost loans.  Or another example would be giving a African American a high cost loan that a non African American borrower with comparable credit rating.  Plaintiff is a member of a protected class.

19.    When Plaintiff sat down at the table to complete the alleged loan process—Defendant(s) underwriter did not provide the BEST program that would fit Plaintiff.  Defendant Wells Fargo underwriter **<u>inflated the interest rate to 9.25 %</u>** but **shows on the loan  application 8.25%--** (this is called Bait & Switch) (http://en.wikipedia.org/wiki/Bait-and-switch  (**EXHIBTS** A ,F)

20.    Plaintiff never received the truth and Lending statement at closing which would have shown Plaintiff   Balloon Note payment would have been. **(EXHIBT R)**

21.    The Truth and Lending statement Plaintiff received had an "E" what is "E"-- estimates? Not real numbers?  "may-be payment amount"? **(EXHIBT R)**

22.    This alleged loan application process is full of Predatory Mortgage Lending Violations  which has injured the Plaintiff

- Non Disclosure(s) (Truth & Lending Statement)

- Big Fees

- Inflated Interest Rates

6

- Steering and Targeting (Disabled, Minorities etc.)

- Adjustable Interest Rates that "Explodes"

- Repeated Loan Modifications  (Flipping)

**EXHIBTS**

A.    Uniform Residential Loan Application —page 2  ( 8.25 % interest rate)

B.    Forensic Affidavit Audit    Page  7 & 14

F.    Mortgage – First page (9.25 % interest rate)

CLAIM 5    Predatory Mortgage Servicing

23.    **Predatory mortgage servicing is abusive, unfair, deceptive, or fraudulent mortgage servicing practices of some mortgage servicers during the mortgage servicing process.** There is no legal definition in the United States for predatory mortgage  servicing. However, the term is widely used and accepted by state and federal regulatory agencies such as the Federal Deposit Insurance Corporation, Consumer Financial  Protection Bureau, Office of the Comptroller of the Currency, Federal Trade Commission and Government Sponsored Enterprises (GSEs) such as Fannie Mae and Freddie Mac.( http://en.wikipedia.org/wiki/Predatory_mortgage_servicing)

24.    A predatory mortgage servicer may abruptly change interest rates, not disclose information about the sale and trade of loans to other lenders, or change terms like due dates on the loan without providing sufficient notification. Borrowers may end up with an  extremely high  interest rate, as such loans commonly do not have capped interest rates. In the case of loans with an adjustable interest rate, the borrower may end up with a stiff bill  when the balloon payment comes due or the interest rate is adjusted for the first time. ( http://www.wisegeek.com/what-is-predatory-mortgage-scrvicing.htm)  **(Exhibit A, B , F)**

25.    Predatory servicing is even easier to get away with than predatory lending, since the customcr has already been landed and has no place to go.( http://www.mtgprofessor.com/A%20-

%20Servicing/borrowers_should_be_able_to_fire_servicers.htm)

26.     In mortgage securitization transactions, the mortgage servicer forwards the borrower's

        payment of principal and interest to the certificate holders (investors) of the special

        securitized trust that owns and holds the promissory notes secured by the mortgages and deeds of

        trust. **(EXHIBT A.** Forensic Affidavit Audit (page 14- 18)

27.     Repeated request for a response to Plaintiff  questions through QWRs went unanswered. The

        rights that  RESPA would have given the Plaintiff was not given by the Defendant(s) for

        disclosure of fees.  Defendant(s) did not respond within the twenty days and did not correct

        account or give a statement explaining fees within 60 days. **(EXHIBT ,I, J,K,L,M,N,O,P)**

                   **CLAIM 6   Real Estate Settlement Procedures Act (RESPA) Violations**

28.     On February 10, 2013, Plaintiff sent the first QWR asking for information about this alleged

        loan to Defendant (s) and to its Agents. Since this date    Defendant(s) failed to respond point by

        point to each and every question. **(EXHIBT I)**

29.     Defendant (s) has not corrected the account, including crediting any late charges or

        penalties, as well as transmit a written notification of the correction to the borrower and provide

        the name and telephone number of a representative of the servicer who can provide further

        assistance to the borrower.

30.     Defendant (s) has not provided Plaintiff  with a written explanation or clarification that

        includes statement of the reasons why the servicer believes the account is correct and the

        name and telephone number of an individual employed by, or the office or department

        of, the servicer who can provide assistance to the borrower.

31.     Defendant (s) has not provided Plaintiff  with a written explanation or clarification

        that includes the information requested by the borrower or an explanation of why the

        information that was requested is unavailable or cannot be obtained and the name and

        telephone number of an individual employed by, or the office or department of, the

servicer who can provide assistance to the borrower. 12 U.SC. § 2605[e][2].

32.    Plaintiff did not have access to the real information regarding the alleged loan(s) to create an intelligent path of discovery.

33.    TILA was meant to level the playing field. Defendant (s) has/had  greater access to the factual knowledge of the alleged loan(s).

## 7  LEGAL STANDING

34.    Defendant Rogers Townsend & Thomas, PC did not have legal standing to file Foreclose in 2007 & 2009.   Defendant Rogers Townsend & Thomas, PC are third party debt collectors and must come under FDCPA.  Therefore, Rogers Townsend & Thomas, PC must validate the debt they are collecting.  At the time of the 2007 & 2009 foreclosure Defendant Rogers Townsend & Thomas, PC did not validate this debt.    Therefore lacked standing to carry out a judicial act.

**(EHIBTS G,H ) In addition they did NOT have the original NOTE & Mortgage-** *Carpenter v.* **Longan**

35.    Defendant Rogers Townsend & Thomas, PC, by its own hand identifies themselves as debts collectors. **(EXHIBT S)**

36.    Defendant Rogers Townsend & Thomas, PC says the :borrower" is in default, never that the loan is in default. That is because they cannot speak about creditor related issues.

37.    Attorneys will not engage discussion on 15 USC 1692 **(i)** This one law is all that is necessary to stop a non judicial foreclosure by a debt collector**.**

38.    Defendant Rogers Townsend & Thomas, PC must show a specific harm and loss to the Defendant(s), not just allege a story based on an original alleged loan. But they do not do so because a debt collector has not been harmed. They never made a alleged loan which was defaulted.

39.    Defendant Rogers Townsend & Thomas, PC during the unlawful filing of the foreclosure process did not  state they were that they are the holder in due course. A holder may be in possession of

9

the original Note but does not have the legal authority to dispose of something. **(Exhibit G,H)** State Street Bank and Trust v. Lord, 851 So. 2d 790 (Fla 4d DCA 2003) To maintain a mortgage foreclosure, the plaintiff must either present the original promissory note or give a satisfactory explanation for its failure to do so. § 90.953(1), Fla. Stat. (2002); W.H. Downing v. First Nat'l Bank of Lake City, 81 So.2d 486 (Fla.1955); Nat'l Loan Investors, L.P. v. Joymar Assocs., 767 So.2d 549, 551 (Fla. 3d     DCA 2000) and *Carpenter v.* **Longan**

40.   Defendant Rogers Townsend & Thomas, PC does not have standing, for only a person who is the holder of the note/mortgage has standing to enforce the note. See, e.g., In re Hwang, 2008 WL 4899273 at 8 and *Carpenter v.* **Longan**

41   Defendant Rogers Townsend & Thomas, PC engaged in an unlawful filling of two foreclosure to Plaintiff. (Exhibit F,G) see: *Carpenter v.* **Longan**

42.   Defendant Wells Fargo is a serving agent and holding its self out to be a creditor-- the creditors does not have standing, for only a person who is the holder of the note   has standing to enforce the note/mortgage. See, e.g., In re Hwang, 2008 WL 4899273 at 8. Mortgage Electronic Registration v. Azize, 965 So. 2d 151 - Fla: Dist. Court of Appeal, 2nd Dist. 2007 PHILOGENE v. ABN AMRO MORTG. GROUP INC., 948 So. 2d 45 - Fla: Dist. Court of Appeal, 4th Dist. The holder of a note/mortgage has standing to seek enforcement of the note./mortgage. See: *Carpenter v.* **Longan**

43.   Defendant Wells Fargo does not have legal standing.  By its own hand has verified they   are a debt collector and therefore bound by the FDCA (Exhibit T) See: *Carpenter v.* **Longan**

44.   Defendant Wells Fargo has committed a fraud. The fraud is that the Defendant Wells Fargo posed as a lender for the purpose of leading Plaintiff into a modification(s) of an alleged loan that can't be modified because it was securitized / sold into the secondary market.

45.  Defendant Rogers Townsend & Thomas, PC and Defendant Wells Fargo cannot answer Plaintiffs inquires under TILA, RESPA, Dodd-Frank until Defendant(s) because they do not have a verified mortgage & Note.

46.  Defendant Rogers Townsend & Thomas, PC and Defendant Wells Fargo must show that they acquired that instrument for consideration and are therefore injured by Plaintiff's fail to pay on it. Defendant Rogers Townsend & Thomas, PC and Defendant Wells Fargo never demonstrate what the consideration is or they were therefore injured. The assignments vaguely say "for consideration received". There is no proof of the consideration. Defendant Rogers Townsend & Thomas, PC and Defendant Wells Fargo are only debt collectors

47.  DEFENDANT (S) in its dealing **has not shown standing** --that they are not the real beneficial party of interest who have a right to enforce. See: **_Carpenter v._ Longan**

48.  Securitization: multiple loans (are pooled and then SOLD in the secondary market, to a TRUST. Defendant(s) took Plaintiff alleged loan, bundle it into a package and turned the loan into marketable securities that can be bought or sold to INVESTORS. **Securitization is the process of transferring all the liabilities off the balance sheet**. **When Plaintiff signed the mortgage note it comes under UCC Article 3**. After securitization, it comes under **Article 8.** Under US law securitization is illegal because it is fraudulent.

http://privateaudio.homestead.com/Exhibit_G_Securitization.pdf AND

http://freedomriver.wordpress.com/securitisation-is-illegal/

"UCC 8-102 (12), (15) and (9) that defined what an entitlement holder is. UCC 8-105 that says we are identified as the person with securities and entitlement right on the books of a banking intermediary. They call them intermediaries under Article 8. This practice is all under Article 8 because it involves securities. That is how they Defendants(s) hiding their practices. Defendant(s) are treating these notes as securities and not Article 3 paper. Under Article 8 "we are the holders of entitlement and possessory rights to the proceeds of the transaction because we are the originator of the first funds transfer on the accounts payable side of the ledger. We are

entitled to the funds."    The link to find Defendant HSI Asset Loan Obligation Trust 2007-WF1-

Mortgage Pass  Through Certificates, Series 2007-WF1--- CIK # 0001387299    SIC 6189    Page

S-86      Pooling Agreement - (Page S-86 Pooling Agreement)

http://www.sec.gov/Archives/edgar/data/1323260/000114420407005528/v064592_424b5.

htm

49.     The promissory note has been discharged in the REMIC as a bad debt and that the

individual share holders have received tax credit for this loss. Once a debt has been

discharged, it loses its ability to collect.  For example, Defendant(s) is putting NOTES into Trusts

that the homeowner has not made ONE payment on.  Then waiting years to assign

mortgage  to Trusts, which is violation to TRUSTS laws.

50.     Under the Financial Accounting Standard 140, (page 4,7,8,9,15) it says that once a loan has

been sold into a pooling and servicing agreement, the lender forever loses control of the asset.

Therefore, Defendant(s) CANNOT legally negotiate a loan modification  CANNOT  collect

mortgage from— and **CANNOT** legally foreclose.   Defendant(s) **DO NOT HAVE LEGAL**

**STANDING** as the real party of interest. They are not the true and beneficial holder in due

course.

51.     Defendant (s) must be made to produce the perfect chain of title. When Defendant (s) sold the

note they lost their right to enforce. U.S. Code Title 12: Banks and Banking  PART 226—

TRUTH IN LENDING (REGULATION Z), a servicer does not have the rights of a  lender if

it has acquired the note for the purposes of administration.  In January 2011, the Massachusetts

Supreme Court issued a decision in U.S. BANK  NATIONAL ASSOCIATION vs. Antonio

IBANEZ in which all the Justices unanimously   agreed. In order for the bank to  be able to

foreclose, they must show a perfection of chain  of title, both in the Mortgage /and the

promissory note. It was also ruled that    a blank assignment was not acceptable proof of

perfection of title for the promissory note. For Plaintiff, this court should take "mandatory

judicial notice"  See:*Carpenter v.* **Longan**

52.     Under the Financial Accounting Standard 140, (page 4,7,8,9,15) it says that once a loan has

        been sold into a pooling and servicing agreement, the lender forever loses control of the asset.

        Therefore, Defendant(s) CANNOT legally negotiate a loan modification  CANNOT  collect

        mortgage from— and **CANNOT** legally foreclose.   Defendant(s) **DO NOT HAVE**

        **LEGAL STANDING** as the real party of interest. They are not the true and beneficial holder

        in due course.    This is a blatant abuse of the law. The promissory note, as well as the Mortgage

        **MUST  BE TOGETHER AT ALL TIMES** and there must **ALWAYS BE A CLEAR AND**

        **UNAMBIGUOUS CHAIN OF TITLE** that is traceable in public records for all parties  of

        interest in real estate.

53.     Plaintiff  have asked Defendant (s) through QWR if the Note is part of a Pooling and

        Servicing Agreement.  Plaintiff have ask Defendant (s) whether the note has been

        securitized. Defendant (s) remains silent. **(Exhibit I,J ,K)**  When Plaintiff  alleged loan was

        closed,  it was    put into a Pooling and Serving Agreement. It was registered on the SEC as a

        REMIC Trust,   ie, a Real Estate Mortgage Investment Conduit.  It is known as a Special Purpose

        Vehicle for tax exemption purposes. A master servicer of the REMIC Trust was   appointed and a

        Trustee managed the Trust.  Once this REMIC was formed, the   Plaintiff's loan got converted

        into a   security that traded on Wall Street. Now Plaintiff's alleged loan permanently turned  into

        a stock – owned by thousands of shareholders all over the world who can change on a daily

        basis.

54.     The Note is in HSI Asset Loan Obligation Trust 2007-WF1 and this a **Real Estate**

        **Mortgage Investment Conduit**   REMIC.  Defendant (s) cannot produce the perfected chain of

        title, because HSBC Bank USA SOLD it.  Therefore Defendant(s) lost    its right to enforce it.

        Defendant(s) cannot show the perfected chain of title.     The link to find HSI Asset Loan

        Obligation Trust 2007-WF1- Mortgage Pass Through    Certificates, Series 2007-WF1--- CIK #

        0001387299    SIC 6189   Page S-86 Pooling Agreement - (Page S-86 Pooling Agreement)

http://www.sec.gov/Archives/edgar/data/1323260/000114420407005528/v064592_424b5.

htm

**Prospectus Supplement to Prospectus dated December 27, 2006**

**Mortgage Pass-Through Certificates, Series 2007-WF1**

**HSI Asset Loan Obligation Trust 2007-WF1:** Issuing Entity

**HSI Asset Securitization Corporation:** Depositor

**HSBC Bank USA, National Association:** Sponsor and Seller

**CitiMortgage, Inc.:** Master Servicer

**WELLS FARGO Bank, N.A.:** Originator and Servicer

55.  **SOUTH CAROLINA  COURT HOLDS THAT FORECLOSURE LAW OF U.S.
     SUPREME COURT TRUMPS EVERYTHING: FORECLOSING PARTY MUST   OWN
     BOTH THE NOTE AND THE MORTGAGE TO FORECLOSE**

In a stunning ruling from the Ninth Judicial Circuit Court of Common Pleas of Charleston,
South Carolina, a Judge has issued a detailed, 4-page written opinion dismissing a foreclosure
action filed by Deutsche Bank National Trust Company as the claimed trustee of an IndyMac
securitization, holding that DB failed to show that it was the owner and holder of the original
Note and Mortgage at the time the Complaint was filed. FDN South Carolina network counsel
Bill Sloan, Esq. represents the homeowner and prepared and argued the   homeowner's Motion
to Dismiss.   Counsel for DB made the familiar argument that it had possession of the original
Note   endorsed in blank, that the Note was a negotiable instrument under the UCC, that the
Mortgage follows the Note, and that thus DB had established its right to foreclose. The Court
disagreed, citing precedent from the United States Supreme Court's decision in **Carpenter v.
Longan**, 83 U.S. 271, 16 Wall. 271, 21 L.Ed. 313 (1872) which the Court found "clearly
supports the notion that the Plaintiff must **own the Note and the Mortgage** to foreclose on the
property (emphasis in the opinion)." The Court determined that "Plaintiff failed to show   that it

owned the Mortgage at the time the Complaint was filed", and also noted that the Mortgage shows MERS to be the mortgagee but that "MERS is never mentioned in the Note."

The Court stated: "It is clear that to have standing in this foreclosure case, Plaintiff must not only be the holder and owner of the original Note, but also the Mortgage as well. Plaintiff's Complaint in this case fails to meet this criteria. Plaintiff lacks standing to initiate and prosecute the foreclosure, and dismissal pursuant to Rule 17(a) and Rule 12(b)(6) SCRCP is appropriate." This ruling is based on foreclosure law from the United States Supreme Court, which trumps any contrary state law which does not require the foreclosing Plaintiff to own both the Note and the Mortgage at the time that the foreclosure Complaint is filed. This ruling demonstrates the essential fallacy in the "UCC, I have the Note, mortgage follows the Note" theory espoused by every attorney for the banks and servicers. What remains to be seen is whether the judiciary handling foreclosure cases will follow the law of the U.S. Supreme Court or not.

56.  The Mortgage or Deed of Trust was assigned from the Originator Defendant(s) directly to the Trustee (DEUTSCHE BANK NATIONAL TRUST COMPANY) for the Securitized Trust (HSI ASSEST LOAN OBLIGATION TRUST 2007-WF1.) **(Exhibit U)**

57.  This process must be done within a ninety day (90) period. The first closing was September 29, 2006. The assignments signed was **October 30, 2007** and recorded **November 12, 2007** which separate the Mortgage and the NOTE making the mortgage unenforceable according to a Supreme Court ruling *Carpenter v. Longan* **(Exhibit 21) Defendant(s) have no standing in this matter**

58.  The Mortgage / Note was executed, dated or assigned in a manner inconsistent with the mandatory governing rules of Section 2.01 of the Pooling and Servicing Agreement.

59.   The assignment of the mortgage /Note was executed by an entity whose name is different than the     entity named in the original document (Exhibits F & U)

60.   The Mortgage was allegedly transferred in a single document along with the Mortgage (i.e., "Assignment of the Note and Mortgage").  You cannot "assign" a mortgage note.  You can only "negotiate" a mortgage note under U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS. (Exhibit U)

61.   The assignment of the mortgage / Note document(s) does not include any reference to a Master Document Custodian. (Exhibit U)

62.   The assignment of the mortgage / note document(s) is not authenticated by any officer or authorized agent of a Master Document Custodian.  (Exhibit U)

63.   The assignment of mortgage document purports to transfer the note to the Trustee for the Securitized Trust before the date the Trust provides for the origination date of instruments in the Trust.  The Prospectus, the Prospectus Supplement and the Pooling and Servicing Agreement will clearly state that the pool of notes includes those originated between date February 2006 and October 2006   (over 1,400 loans in this polling – S-  28page) http://www.sec.gov/Archives/edgar/data/1323260/000114420407005528/v064592_424b5. htm

64.   The Mortgage was assigned from the initial aggregator    (Defendant(s) directly to the Securitized Trust (HSI ASSEST LOAN OBLIGATION  TRUST 2007-WF1) with no assignments to the Depositor or the Sponsor for the Trust. (Exhibit U)

65.   The Mortgage was executed, dated or assigned in a manner inconsistent   with the mandatory governing rules of Section 2.01 of the Pooling and Servicing Agreement. The assignment of the mortgage was executed by an entity whose name is different than the entity named in the original document (Exhibit U)

66.   The Mortgage was allegedly transferred in a single document along with the NOTE (i.e., "Assignment of the Note and Mortgage"). You cannot   "assign" a mortgage note.  You can only "negotiate" a mortgage note under U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS. (Exhibit U)

67.   The assignment of the mortgage document(s) does not include any reference to a Master Document Custodian. (Exhibit U)

68.   The assignment of the mortgage document(s) is not authenticated by any officer or authorized agent of a Master Document Custodian.  (Exhibit U).

68.   What Defendant(s) will claim is that it doesn't have the original note, but its location is    at the address 1015 10th Avenue Southeast, Minneapolis, MN 55414-131.  In a letter from       Kate Harrenstein in response  to my request for a certified copy of a Wet Ink original of my MOTGAGE –it is stated  "cannot be given– 'we are not subject to USC  Title 18, Part1,  Chapter 101, Section 2071"  The truth is, DEFENDANT(S) cannot produce the original  Note MORTGAGE due to the fact they have no document therefore have  no legal standing in this matter. (EXHIBIT U)

69.   "A party must have standing to file suit at its inception and may not remedy this defect by  subsequently obtaining standing."  Venture Holdings & Acquisitions Grp.,LLC v. A.I.M. Funding Grp., LLC, 75 So. 3d 773, 776 (Fla. 4th DCA 2011).  Defendant (s) cannot produce the perfected chain of title, because HSBC Bank USA    SOLD  it.  Therefore  DEFENDANT(S) lost its right to enforce it.  Defendant(s) cannot   show the perfected chain of title.

70.   **WELLS FARGO  v.  Cirigliano** (3/10)  (No evidence to show a chain of title of how the note got transferred to Defendant(s).)

71.   **U.S. Bank v. Harpster** (3/10) (Notary fraud, assignment fraud, fraud upon the court, dismissed with prejudice) Judge Tepper

72. **WELLS FARGO v. Erobobo** \*\*(NY 4/13) (**Instructional**) There is a difference between the capacity to sue which gives the right to come into court, and possession of a cause of action which gives the right to relief. Incapacity to sue is not the same as insufficiency of acts to sue upon.

73. **WELLS FARGO v McNee** (11/11) As the First Department held in Katz v. East-Ville Realty Co., (249 AD2d 243, 243), a "[p]laintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest [is] without foundation in law or fact" (see Kluge v. Fugazy, 145 AD2d 537). Hence, Defendant(s)'s attempt to foreclose upon the subject mortgage must be denied, the complaint dismissed, and McNee's cross-motion(s) to dismiss for lack of standing pursuant to CPLR 3211(a)(3) granted.

74. **Deutsche Bank v. Mitchell**(8/11) **Summary judgment reversed - sale vacated.** The assignment was not perfected until after the filing of the complaint, and plaintiff presented no evidence of having possessed the underlying note prior to filing the complaint. If plaintiff did not have the note when it filed the original complaint, it lacked standing to do so, and it could not obtain standing by filing an amended complaint. We vacate the sheriff's sale, the final judgment and the order granting summary judgment and remand to the trial court.

75. **Deutsche Bank v. Francis (Dismissed With Prejudice**-Schack)(3/11): I discovered that there is no record of plaintiff DEUTSCHE BANK ever owning the subject mortgage and note. Therefore, with plaintiff DEUTSCHE BANK lacking standing, the instant action is dismissed with prejudice and the notice of pendency cancelled. A want of "standing to sue," in other words, is just another way of saying that this particular plaintiff is not involved in a genuine controversy, and a simple syllogism takes us from there to a "jurisdictional" dismissal: (1) the courts have jurisdiction only over controversies; (2) a plaintiff found to lack "standing" is not involved in a controversy; and (3) the courts therefore have no jurisdiction of the case when such a plaintiff purports to bring it.

76.    **WELLS FARGO  Bank, Americas Servicing Company, MERS v Hunte  (Judge**

**Schack, Apr.14, 2010/ Dismissed with prejudice, possible sanctions.)** (The court

"discovered that WELLS FARGO executed a satisfaction of the instant mortgage more     than ten

months ago." "The Court is gravely concerned that: it expended scarce resources  on an action t

hat should have been discontinued." "the Court, in its discretion may impose financial

sanctions upon any party or attorney in a civil action or proceeding who   engages in frivolous

conduct."**)**

77.    **WELLS FARGO Bank, N.A. v Hughes** (1/10) The terms of the proposed __modification

agreement__, particularly but not exclusively the inclusion of an adjustable rate component, are

unacceptable to this court. "The above matter is hereby __dismissed without prejudice__; and

it is further ordered, that in the event WELLS FARGO commences a new action in foreclosure

with respect to this borrower and the premises at issue herein, no additional costs or

attorney fees will be allowed, absent good cause shown.

78.    *B8ACKFIRE!* **Emigrant Mtge. Co. Inc. v Corcione:** (7/10) "**unconscionable,  unreasonable**

**[and] overreaching" mortgage agreement.** For all of the foregoing reasons, it is, therefore

ordered, adjudged and decreed that plaintiff's application for summary judgment and

appointment of a referee is denied; and it is further ordered, adjudged and decreed that plaintiff,

its successors, assigns and others are forever barred, foreclosed and prohibited from

demanding, collecting or attempting to collect, directly or indirectly, any and all of the sums in

this proceeding delineated as interest, default interest, attorney's fees, legal fees, costs,

disbursements, advances or any sums other than the principal balance, that may have accrued

from May 1, 2008 up to the date of this  order; and it is further ordered, adjudged and decreed

that Defendant(s) recover judgment against plaintiff Emigrant Mortgage Co. Inc., in the

principal sum of $100.000.00 as damages for what he said was an "**unconscionable,**

**unreasonable [and] overreaching" mortgage agreement**.

79.    **WELLS FARGO v. Erobobo** (NY 4/13) (**Instructional**) There is a difference between  the capacity to sue which gives the right to come into court, and possession of a cause of action which gives the right to relief. Incapacity to sue is not the same as insufficiency of facts to sue upon. In Article II, section 2.01 Conveyance of Mortgage Loans, the PSA requires that the Depositor deliver and deposit with the Trustee the **original** note, the **original** mortgage and an **original** assignment.

80.    **WELLS FARGO v. Ford** (reversed-lack of standing)(1/11) Well-reasoned opinion detailing why WF did not have standing. "The documents that DEFENDANT(S) relied upon in support of its motion for summary judgment to establish its status as a holder were not properly authenticated".

81.    **DEUTSCHE BANK NATIONAL TRUST v. BRUMBAUGH**(1/12) (Reversed) To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing.

82.    **Deutsche v. Gilbert** (11/12) (Illinois) Good lack of standing opinion. We affirm the judgment of the circuit court of Du Page County granting summary judgment in favor of Deutsche Bank on Gilbert's counterclaim under the Truth in Lending Act. However, the  trial court erred in reconsidering its initial determination that the foreclosure claim must be dismissed because Deutsche Bank lacked standing at the time of filing.     Accordingly, we reverse the judgment of foreclosure, vacate the order  approving sale, and dismiss the foreclosure.

**CLAIM 8    The Fair Debt Collection Practices Act (FDCPA) VIOLATIONS**

83.    Defendant, Roger Townsend & Thomas, PC tried to foreclose unlawfully in 2007 and 2009. **Carpenter v.    Longan**, 83 U.S. 271, 16 Wall. 271, 21 L.Ed. 313 (1872) wh

84.    **(b) Authorization of actions:** Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors. -15 USC 1692i - Defendant, Roger Townsend & Thomas, PC filed two (2) times.  (Exhibit G, H)

85.    If Defendant (s) are holding itself out to be a debt collector they must be required to comply

with the Fair Debt Collection Practices Act. *Williams v. WELLS FARGO, Et al.*, 2012 U.S. Dist. LEXIS 2871 (W.D. WA, January 12, 2012).

86. Defendant (s) was in violation of federal debt collection laws by failing to provide verification of the alleged debt. 15 U.S.C. § 1692, et seq.

87. Defendant (s) are trying to collect a debt that is that is not valid.

88. Defendant (s) falsely representing the character, amount or legal status of the debt

89. Defendant, Roger Townsend & Thomas, PC cannot claim that the debt in question was a separate debt from the debt in the foreclosure.

90. Defendant Roger Townsend & Thomas, PC must supply admissible evidence according to the rules of evidence. "Copies" of documents are not admissible evidence. Demonstrate the money trail, the original note,-not copies. What competent fact witness can the attorney bring to bear that that Plaintiff got the alleged loan and was in default at time of attempting to foreclosed.

91. Defendant, Roger Townsend & Thomas, PC had /have no interest in Plaintiff's home. Plaintiff don't owe any money, never signed an application with Defendant, Roger Townsend & Thomas, PC , were never provided services by Defendant, Roger Townsend & Thomas, PC

92. Defendant, Roger Townsend & Thomas, PC debt collectors by the admissions on their own correspondence. Therefore their attempt to foreclose in 2007 & 2009 was unlawful

93. The Defendant Wells Fargo Agent (Bernise McCoy) who called Plaintiff from always stated "this is an attempt that to collect a debt and that any information obtained from you will be used for that purpose"

94. After Plaintiff received letter from Bernise McCoy, June 25, 2014, with the standard "This is an attempt to collect a debt" etc-- Plaintiff disputed the debt and requested validation as well as the name of the original creditor. On June 25, 2014 I faxed a letter RESPA / QWR, Complaint and Dispute and Validation of Debt Letter. (Exhibit J)

95.    After no response from Ms. McCoy, on or about August 6, 2014, Plaintiff sent another (receipt

        return certified mail) a RESPA/QWR, Complaint, and Dispute of Debt and Validation of Debt

        Letter to Kou Phongphetpanhna after speaking with her via phone.  To this date,

        Plaintiff have not received an answer point by point under penalty of perjury that this debt

        belongs to me. Plaintiff is am still waiting for the original creditor name and address

        information to be mailed to me. (Exhibit K)

96.    Under FDCPA **(4)** " if the consumer notifies the debt collector in writing within the thirty-

        day period that the debt, or any portion thereof, is disputed, the debt collector will obtain

        **verification** of the debt or a copy of a judgment against the consumer and a copy of such

        **verification** or judgment will be mailed to the consumer by the debt collector; and **(5)** a

        statement that, upon the consumer's written request within the thirty-day period, the debt

        collector will provide the consumer with the name and address of the original creditor, if

        different from the current creditor.

97.    **Verification** generally means some sworn document or affidavit. This means when

        Plaintiff contested the debt under FDCPA (in addition to sending a QWR) the party who is

        supposedly collecting or enforcing the debt has a duty to "**obtain verification".**   And that means

        they can't verify it themselves unless they are the actual lender. And the statutes says pretty

        clearly that they must give the lenders name and contact information past and present.

### CLAIM 9    TRUTH IN LENDING ACT VIOLATIONS

98.    After due diligence and sending Debt Validation letters, QWR, Letters, UCC Presentments

        letters, etc., Plaintiff does not know the identity of the lender  In effect the true lender

        NEVER lent me any money—**therefore the three-year statue of Limitation have not   begun**

        **to run.**  Martinec v. Early Bird International, Inc., (Fla: Dist. Court of Appeals, 4th Dist.

        2012)  A consumer, relying on 15 U.S.C. § 1640(a)(1), is entitled to actual and statutory

        damages as a defense of recoupment or set-off to an action for collection of a debt even

when such claims would be barred by TILA's three-year statute of limitations. *Beach v. Great W. Bank,* 670 So. 2d 986, 989 (Fla. 4th DCA 1996) (citing 15 U.S.C. § 1640(e)) *aff'd,* 692 So. 2d 146 (Fla. 1997), *aff'd, sub nom. Beach v. Ocwen Federal Bank,* 523 U.S. 410 (1998).

99.    Defendant(s) unlawful act(s) was not immediately known to Plaintiff or did Plaintiff ever imaged foreseeable consequences as a result of Defendant (s) acts. Plaintiff   tried over a period   of  **593 days**   since February 13, 2013 to discover knowledge about this matter and the identify   of the lender.  Defendant(s) represented a matter of fact. Defendant(s) concealment of documents should have been disclosed.  This deception and intention to deceive acted upon Plaintiff's action upon Plaintiff's legal injury

"The discovery rule applies to this action.  See S.C. Code Ann. § 15-3-535 (2005) (applying the discovery rule to causes of action arising under section 15-3-530(5)); Rumpf v. Massachusetts Mut. Life Ins. Co., 357 S.C. 386, 394, 593 S.E.2d 183, 187 (Ct. App. 2004) (stating "[i]n determining when a cause of action arose under section 15-3-530, we apply the 'discovery rule'").  According to the discovery rule, the statute of limitations begins to run when a person could or should have known, through the exercise of reasonable diligence that a cause of action might exist.  Abba Equip., Inc. v. Thomason, 335 S.C. 477, 485, 517 S.E.2d 235, 239 (Ct. App. 1999).  The date on which discovery of the cause of action should have been made is an objective question.  Joubert v. S.C. Dep't of Soc. Servs., 341 S.C. 176, 191, 534 S.E.2d 1, 9 (Ct. App. 2000).  In Young v. South Carolina Department of Corrections, this court stated: In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.  333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct. App. 1999)."

23

100.   When Plaintiff signed the alleged loan documents **Plaintiff thought it knew who was going to provide the financing**. Courts recognize the date of signing a binding loan contract as the "**date of consummation when the lender is identifiable**."

101.   Jackson v. Grant, 890 F.2d case (9th Circuit 1989), said: "***the Ninth Circuit held that ..a loan contract was not consummated when the borrower signed the promissory note and deed of trust because the actual lender was not known at that time.*** Under these circumstances, the loan is not "consummated" until the actual lender is identified, because until that point there is no legally enforceable contract."

102.   Defendants (s) are Pretender lenders –and intermediary "originators" who make false representations to the effect that they are "lending money. So, when Plaintiff contracted with the Pretender "originator" of the loan (as opposed to the real lender), has the true lender ever been identified? **No, they have not.** So shouldn't the promissory note be between Plaintiff and the real lender? After all, the "lender" on the note never lent Plaintiff any money, and this can be verified by looking at their balance sheet.

103.   In reality, Defendants (s) are doing nothing more than earning a commission on the money someone else is lending the Plaintiff (i.e. some Wall Street investor in Plaintiff loan pool who is funding the loan, who is not identified at any stage of the loan process, and who expects a return on their investment). These hidden investors are the true "lender(s)" .SEE: POOLING SERVICE AGGREMENTS-28page)

http://www.sec.gov/Archives/edgar/data/1323260/000114420407005528/v064592_424b5.htm

104.   Until the real Wall Street entity, or Wall Street Investor, or true source of the table funded loan is identified, the loan should not be deemed "consummated" under TILA and the three year right to rescind should remain open until such disclosure is made. **That is TRUTH IN LENDING WHICH IS THE WHOLE POINT OF TILA IN THE FIRST PLACE**.

105.    Since Plaintiff did not receive the Truth & Lending Disclosures, Plaintiff did not know the APR, finance charges, Amortization period, or the balloon payment(s) . These concerns would have been pointed out on HUD 1 and the Truth & Lending Disclosures which not in Plaintiff alleged loan packages. |a) failing to deliver to the Defendant two copies of notice of the right to rescind (with all of the pertinent statutory disclosures) |b) failing to properly and accurately disclose the "amount financed" |c) failing to clearly and accurately disclose the "finance charge" |d) failing to clearly and accurately disclose the "total of payments" |e) failing to clearly and accurately disclose the "annual percentage rate" | f) failing to clearly and accurately disclose the number, amounts and timing of payments scheduled to repay the obligation | g) failing to clearly and accurately itemize the amount financed. |The transaction was subject to TILA and rescission rights since it was a consumer credit transaction involving a lien or security

### Claim 10     Consumer Protection Act violations

106.    Defendants (s) caused injury before Plaintiff reached the closing table. Defendants (s)originated mortgage to without considering my ability to repay the loan. The gradual deterioration in underwriting standards led to the in mortgage delinquencies (s) and rates of foreclosure(s).

107.    Defendants (s) violated The ACT by not fully investigation ability to repay, and by not providing a qualified mortgage, charging excess upfront point and fees toxic loan features.

108.    Continuing the use of "dual tracking," proceeding with accelerating of loan /foreclosure while the loan modification (2008, 2011, 2014) application was pending, providing contradictory and confusing information regarding the status of foreclosure proceedings

### Claim 11     Violation of Unfair and Deceptive Trade Practices Act.

109.    Defendant(s) violated the Unfair and Deceptive Trade Practices Act, F.S. 501.201, et seq.

110.    Failing to properly disclose at or prior to closing all costs, fees and expenses associated with loan

111.    Obtaining a yield spread premium (YSP) based upon the selling of a high interest rate and did not disclose the range of interest rates for which Plaintiff was qualified.

112.    Charging excessive fees and making payments to entities not lawfully entitle to receive payments

113.    These actions by Defendant(s) are unconscionable and unfair and deceptive practice

**Claim 12 Fraud**

114.    The alleged Note and Mortgage and other loan documents were    made by the Defendant(s) in interest and therefore void and unenforceable.  Specifically, the    originator (WELLS FARGO) of the alleged loan represented to the Plaintiff that the underwriter had knowledge, skill, information and ability to make mortgage loans and that the Underwriter would have Plaintiff best interest in the financing process and protect the Plaintiff interest.

115.    Before the alleged loan was made, the Defendant(s) represented to the Plaintiff , that the product would   be the "best" mortgage available and  that it would be a good loan and would benefit the Plaintiff.   The Plaintiff was induced by Defendant(s) to enter a loan arrangement that were known to be false.

116.     The Defendant(s) underwriter did not have the skill, knowledge and information to make  the mortgage loan as represented or was the loan a benefit to the Plaintiff.

117.    The Defendant did not have the bets interest of the Plaintiff nor did the Plaintiff receive the best loan available or a good loan.

118.    Plaintiff solely relied on the Defendant(s) representation and did not think Defendant would cause harm

119.    The Defendant(s) failed to disclose all fees, cost and expenses.  The Plaintiff was charged excessive fees and made payment of fees to entitles not entitle to receive.

121.    Defendant(s) fail to provide Plaintiff with all requires disclosures by law.

122.    The only parties benefiting from the loan were the Defendant(s) and service providers. Defendants  committed  acts of fraud in written, their silence, partial disclosure and not fully representing the law

### Claim 13 Frauds in the Inducement

123. Defendant(s) alleges that they own Note and Mortgage in question.

124. Defendant is liable for actions of its underwriter and Agents

125. Defendant(s) and / or Agent made false statement and omissions of material facts, thereby the Plaintiff has tried to verify documents, however verification was denied when Defendant(s) kept making false assertion of fact and not disclosing fact.

126. Defendant(s) and / or its Agent should have known the entire loan process was and untruth

### Claim 14    Violations of HOEPA

127. Defendant(s) failed to make proper disclosures and committing intentional predatory lending by including prohibited terms. pursuant to 15 USC § 1639 et seq.

### CLAIM 15    Unconscionable Acts

128. Defendants (s) has acted unconscionable when Plaintiff made application for alleged loan and the entire process(s) was / is unjust and extremely one-sided in favor of Defendants (s) who had the superior bargaining power and the fact that Plaintiff did not fully understand the mortgage language.

Vanessa D. Bartley
68 Lilleiflield Dr
Elgin, SC 29045
803 237 4164

30 Spt 2014
Date

RLIEF

129.  The Plaintiff ask and pray for the following:

130.  For a temporary and preliminary injunction enjoining Defendant(s) from transferring the  Subject

Property from taking any action to evict Plaintiffs from the home during  the pendency of

this action;

131.  That the Court enters an Order to have the title determined to be unencumbered by the claims of

one or more Defendant(s) who have either expressed their claim somehow or who appear in the

title record but actually (factually) lack any interest in the particular piece of real property that is

the subject matter of the lawsuit.  The Deed of Registry records contains a lien in favor of

WELLS FARGO but that no money is owed to WELLS FARGO and that therefore there is no

obligation, which therefore means that there is no note that could be introduced as evidence of a

non-existent obligation and in turn means that the mortgage lien is securing an obligation that

does not exist, possibly never existed;

132.  The Court order Plaintiff quiet title establishing Plaintiff full and clear ownership of said

property;

133.  That the Court enters an Order to cancel any Notice of Default, Notice of Trustee's Sale,  and

Trustee's Deed;

134.  Cancellation of Deed & Trust and Promissory note;

135.  For general special and stationary damages

136.  For Punitive damages

137.  Clear credit report

138.  No IRS penalties

139.  For other monetary relief as the court deem appropriate

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

Vanessa D. Bartley (Pro Se)                          Civil Action No._____

                                           Plaintiff,

v.

WELLS FARGO BANK, NA
420 Montgomery Street
San Francisco, CA 94104

Deutsche Bank National Trust Company as Trust for
HSI Assets Loan Obligation Trust 2007-WF1,
Mortgage Pass Through Series 2007 WF1
1761 E St. Andrews Place
Santa Ana, CA 92705

Roger Townsend & Thomas PC
PO Box 100200
Columbia, SC 29202                          Defendants

## Certificate of Service

I hereby certify that on this          day of            2014, a copy of the foregoing Complaint  was
mailed, postage prepaid, receipt return to Defendant

                                        _____

                                        Vanessa D. Bartley
                                        68 Lilleifeld Drive
                                        Elgin, SC 29045
                                        803 237 4164

RLIEF

129.    The Plaintiff ask and pray for the following:

130.    For a temporary and preliminary injunction enjoining Defendant(s) from transferring the  Subject

        Property from taking any action to evict Plaintiffs from the home during  the pendency of

        this action;

131.    That the Court enters an Order to have the title determined to be unencumbered by the claims of

        one or more Defendant(s) who have either expressed their claim somehow or who appear in the

        title record but actually (factually) lack any interest in the particular piece of real property that is

        the subject matter of the lawsuit.  The Deed of Registry records contains a lien in favor of

        WELLS FARGO but that no money is owed to WELLS FARGO and that therefore there is no

        obligation, which therefore means that there is no note that could be introduced as evidence of a

        non-existent obligation and in turn means that the mortgage lien is securing an obligation that

        does not exist, possibly never existed;

132.    The Court order Plaintiff quiet title establishing Plaintiff full and clear ownership of said

        property;

133.    That the Court enters an Order to cancel any Notice of Default, Notice of Trustee's Sale,  and

        Trustee's Deed;

134.    Cancellation of Deed & Trust and Promissory note;

135.    For general special and stationary damages

136.    For Punitive damages

137.    Clear credit report

138.    No IRS penalties

139.    For other monetary relief as the court deem appropriate

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Vanessa D. Bartley (Pro Se)                                    Civil Action No._____

                                                 Plaintiff,

v.

WELLS FARGO BANK, NA
420 Montgomery Street
San Francisco, CA 94104

Deutsche Bank National Trust Company as Trust for
HSI Assets Loan Obligation Trust 2007-WF1,
Mortgage Pass Through Series 2007 WF1
1761 E St. Andrews Place
Santa Ana, CA 92705

Roger Townsend & Thomas PC
PO Box 100200
Columbia, SC 29202                          Defendants


### Certificate of Service

I hereby certify that on this        day of            2014, a copy of the foregoing Complaint  was
mailed, postage prepaid, receipt return to Defendant



                                        _____
                                            Vanessa D. Bartley
                                            68 Lilleifeld Drive
                                            Elgin, SC 29045
                                            803 237 4164

29